813 A.2d 1243 (2003)
357 N.J. Super. 41
CENTER FOR MOLECULAR MEICINE AND IMMUNOLOGY, Plaintiff-Respondent,
v.
TOWNSHIP OF BELLEVILLE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2002.
Decided January 17, 2003.
*1244 John B. Hall argued the cause for appellant (McManimon & Scotland, attorneys; Mr. Hall, of counsel and on the brief).
Susan A. Feeney, Newark, argued the cause for respondent (McCarter & English, attorneys; Ms. Feeney of counsel and on the brief; Michael J. Caccavelli, on the brief).
Before Judges COBURN, COLLESTER and ALLEY.
The opinion of the court was delivered by
COBURN, J.A.D.
This real estate tax exemption case concerns property owned by Essex County and formerly occupied by its Geriatric Center, which closed in 1989. In 1995, plaintiff, Center for Molecular Medicine and Immunology ("CMMI"), a nonprofit entity presently engaged in cancer research, leased the property from the county for 115 years. In 1997, defendant, *1245 Township of Belleville, assessed the property for $4,231,900 against CMMI. Relying solely on N.J.S.A. 54:4-3.6, which exempts certain nonprofit organizations, CMMI appealed unsuccessfully to the Essex County Board of Taxation and then to the Tax Court, which affirmed the judgment on the ground that the initial appeal was untimely. Molecular Medicine v. Belleville Tp., 18 N.J. Tax 215, 224 (Tax Ct.1998). We reversed and remanded for trial on the merits for the 1997 tax year. CMMI v. Belleville Tp., 19 N.J. Tax 193, 199 (App. Div.), cert. denied, 165 N.J. 677, 762 A.2d 658 (2000). That case remains pending in the Tax Court awaiting our disposition of this appeal, which is limited to the tax years 1998 and 1999. Additional appeals for subsequent years are in the same status.
For the tax years 1998 and 1999, defendant continued the $4,231,900 assessment against CMMI. CMMI filed complaints in the Tax Court, again seeking exemption under N.J.S.A. 54:4-3.6 ("Section 3.6"), but adding an alternative claim under N.J.S.A. 54:4-3.3 ("Section 3.3"), which exempts property of public entities used for public purposes. The Tax Court did not consider the merits of CMMI's claim to exemption under Section 3.6, holding, instead, that the case was governed by Section 3.3, under which, in its view, CMMI was entitled to exemption from the assessment. Center for Molecular Med. v. Belleville, 19 N.J.Tax 342, 356 (2001). Defendant appeals. We conclude that the Tax Court erred in relying on Section 3.3 and in failing to address CMMI's exemption claim under Section 3.6. Therefore, we reverse and remand to the Tax Court so that it may resolve plaintiffs Section 3.6 claim. However, because of the approach taken by the Tax Court, there is one aspect of plaintiff's Section 3.6 claim which we must determine; namely, whether a lessee under a 115 year lease should be considered an owner entitled to tax exemption if otherwise qualified under the statute.

I
We limit our statement of facts essentially to those undisputed matters relevant to the issues we resolve. The property, 520 Belleville Avenue (Block 540, Lot 1.01 on the Tax Map), is a 9.13 acre tract containing a 200,000 square foot building. It has been owned by Essex County for many years and was used by the county for a geriatric center until 1989, after which date it became vacant. In 1995, the county decided to transfer the property to CMMI.
CMMI is a nonprofit entity entitled to exemption from federal taxes under the Internal Revenue Code, 26 U.S.C.A. 501(c)(3). In general, its organizational documents indicate that its purpose is to "promote . . . and conduct ... scientific and educational enterprises, activities and institutions ...." Its witnesses described its mission as cancer research coupled with a limited amount of experimental treatment, mostly for terminal cancer patients. The treatment is provided without charge in an outpatient clinic based on referrals from primary care physicians. In 1988, CMMI became a tenant of the University of Medicine & Dentistry in Newark. In 1993, CMMI began to explore moving to the Belleville property. We described the resulting controversy in our opinion in CMMI v. Belleville Tp., 19 N.J. Tax 193, 195 (2000), the case involving CMMI's appeal from the 1997 assessment:
From the outset public controversy over the proposed use centered on the assumption that CMMI would be entitled to a local property tax exemption.
Articles in the local press gave coverage to objectors who lamented that the vacant property owned by the County of *1246 Essex and formerly occupied by Essex County Geriatric Hospital would be unavailable as a tax ratable. Comments from the Essex County Executive and Freeholders as well as the Belleville Mayor, Council and Planning Board at various public meetings acknowledged that CMMI would be exempt from taxes. Ultimately, the Township Council supported the project.
The initial transfer of the property was accomplished by a set of documents, which were labeled "deeds," dated July 20, 1995, using the Essex County Improvement Authority as an intermediary. By identical "deeds," one covering the land and the other the building, the property was conveyed first to the Authority and then to CMMI. The consideration for the land was $1.00 and the consideration for the building was $5 million. During the first twenty-five years, the property would automatically revert to the grantor under certain conditions, which may be summarized as follows: CMMI permanently ceasing to use the premises for health care; CMMI losing its "tax exempt status"; or CMMI erecting another structure on the site without the county's consent. Each "deed" also provided that the property would "automatically revert to the Grantor [on July 20, 2020] and on such date the Grantor shall be vested in indefeasible fee simple absolute in and to the property...." However, each "deed" went on to provide that the reverter was "subject to the exclusive right of CMMI and its successors and assigns to have an irrevocable option to lease" the property in accordance with the terms of the attached lease, which was recorded along with the "deeds." The lease provided for an initial term of thirty years, with CMMI having the right to two 30-year extensions. The amount of rent, if the parties could not agree, was specified only as "the fair market rental value as shall be determined [by] arbitration procedures" set forth in the lease. Adjustment could be made every five years. At the end of 115 years, the property would automatically revert to the County.
CMMI began occupying the property in the fall of 1996. By the time of the assessment, it was fully using about 70,000 square feet of the building, which it described as Phase I, and had begun renovating another 45,000 square feet, which it described as Phase II. No evidence was presented with respect to the nature or timing of subsequent phases. After inspection, the tax assessor imposed his levy because, contrary to his understanding of the proposed use, the building was not being used as a hospital.

II
According to the Tax Court, the first issue to be resolved was whether CMMI was entitled to claim an exemption under N.J.S.A. 54:4-3.3 or N.J.S.A. 54:4-3.6, which it believed turned on whether the property is owned by the county, making Section 3.3 applicable, or by CMMI, making Section 3.6 applicable. 19 N.J. Tax at 350.
Focusing solely on the first 25-year term, the Tax Court found that the county was the owner since the property reverted to it at the end of that term in fee simple absolute. Id. at 351-52. The Tax Court's only comment on the recorded lease is contained in a footnote, which reads as follows: "Although the deed from Essex County to [CMMI] refers to a purportedly irrevocable option enabling [CMMI] to release the premises, neither party argued that said clause has the effect of converting taxpayer's interest into a fee simple absolute." Id. at 351 n. 4 (emphasis added). Why the Tax Court referred to the irrevocable option in that manner is unexplained. There is nothing "purported" about it. CMMI has the irrevocable *1247 option under the initial "deeds" and under the lease to three 30-year terms beyond the first 25-year term. Moreover, as shall appear, the initial question is not whether the extensions converted this arrangement into a fee simple absolute in CMMI (they clearly did not), but whether the transaction called for CMMI to be treated as the owner for the purposes of real estate taxation and possible exemption.
Having determined that CMMI could only be exempt under Section 3.3, the Tax Court turned to the question of whether the property was being used for a public purpose, the key requirement for an exemption under this section. Id. at 353.
Despite the absence of any specific statutory authority for a county to conduct or support cancer research, the Tax Court concluded that a public purpose was being served, relying on N.J.S.A. 52:9U-2, which concerns State funding of cancer research, and the "broadly-defined police power which enables [municipal governments] to regulate for the health, safety, welfare, and morality of the persons within their borders." Id. at 354.[1] In the final section of its opinion, the Tax Court determined that the property was being used exclusively for its intended public purpose because the renovations of the rest of the building would be completed within a reasonable time. Id. at 355-56.
*1248 On appeal, both parties initially limited their arguments to the questions of public use and exclusivity. Neither took issue with the Tax Court's erroneous determination that this case was governed by Section 3.3 and not by Section 3.6. However, an appellate court may raise new issues of law "where upon the total scene it is manifest that justice requires consideration of an issue central to a correct resolution of the controversy and the lateness of the hour is not itself a source of countervailing prejudice ...." In re Appeal of Howard D. Johnson Co., 36 N.J. 443, 446, 177 A.2d 756 (1962). Prejudice is obviously absent here since CMMI's claim to an exemption under Section 3.6 was pled and tried. Moreover, we gave the parties an opportunity to file supplemental briefs on the issues we raised.

III
Section 3.3 provides exemption from local real estate taxation for property owned by counties, and certain other public entities, when the property is used for public purposes, either directly by the public entity or by a private party under a lease. Port of New York Authority v. City of Newark, 20 N.J. 386, 395-96, 120 A.2d 18 (1956). When county property is devoted to a private purpose, as defendant claims, the county is the proper taxpayer against which the assessment should be made.
Jamouneau v. Local Government Bd., 6 N.J. 281, 291, 78 A.2d 553 (1951). Otherwise, it is the county that is entitled to the tax exemption. But in this case, no assessment was made against the county, which is not a party to these proceedings. The Tax Court incorrectly ruled that CMMI's right to exemption should be considered under Section 3.3. That section could only be relevant if defendant had attempted to tax the county. Therefore, we turn to Section 3.6.
Section 3.6 provides exemption from real estate taxes for buildings, and the land[2] on which they are erected, used by nonprofit organizations engaged in certain specific activities, including buildings and land used by nonprofit organizations engaged in the moral and mental improvement of people, the exemption claimed by CMMI, provided that the organization "owns the property in question."
The standards for federal tax exemption under 26 U.S.C.A. 501(c)(3) "have no relation to state law governing property tax exemption." The Presbyterian Homes of the Synod of New Jersey v. Division of Tax Appeals, 55 N.J. 275, 286 n. 3, 261 A.2d 143 (1970). In addition to ownership of the property, the tax exemption claimant must meet a dual test:
*1249 Under the statute, exemption from taxation is tested by exclusiveness both of purpose of the organization and of use of the property for the moral and mental improvement [of people].
[Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961) (emphasis added).]
The determination of purpose requires a review of the claimant's organizational documents, which must mention an exempt purpose under Section 3.6. Black United Fund of N.J., Inc. v. City of East Orange, 339 N.J.Super. 462, 466, 772 A.2d 65 (App.Div.2001). Moreover, since the test is based on exclusivity, those documents may not include purposes other than those authorized by the exemption statute. City of Ventnor City v. Interdenominational Foreign Missionary Soc. of N.J., 13 N.J. Tax 445, 454-55 (1993) aff'd 15 N.J. Tax 160 (App.Div.1994).
As already noted, our review is impeded by the lack of findings of fact, as well as legal analysis, with respect to the dual test of Section 3.6 and the claimed land exemption. Appropriate deference to the expertise of the Tax Court, G & S Co. v. Borough of Eatontown, 6 N.J. Tax 218, 220 (App.Div.1982), warrants remand of those issues.
On the other hand, we are obliged to resolve the issue of the sufficiency of CMMI's interest in the property as supporting its claim for exemption. We agree with the Tax Court's construction of the "deeds" transferring the building and land to CMMI as being leases. "[W]hether a particular agreement is a lease depends upon the intention of the parties as revealed by the language employed in establishing their relationship ...." Thiokol Chem. Corp. v. Morris County Bd. of Taxation, 41 N.J. 405, 417, 197 A.2d 176 (1964). Since the "deeds" turn over possession for a limited period of time (25 years), the transaction is more appropriately classified as a lease. We disagree, however, with the Tax Court's treatment of the combination of the "deeds" and the lease attached thereto. As previously noted, the instrument entitled a lease provides for an initial term of thirty years with two irrevocable thirty-year extensions at CMMI's option. A "lease containing an option to extend is regarded as a lease for the full possible extended period, terminable earlier by the tenant's election not to continue." 2 Powell on Real Property § 16B.05[4]. Thus, the combination of the "deeds" and lease creates a tenancy for 115 years.
Section 3.6 provides, however, that its exemption "shall apply only where the [entity] claiming the exemption owns the property . .. ." The question, then, is whether a 115-year lease comes within the concept of ownership as used in that statute.
In Lake End Corp. v. Rockaway Tp., 185 N.J.Super. 248, 256, 448 A.2d 475 (App.Div.1982), which involved renewable 99-year leases, we observed that "[a]s a matter of law and fact, 99-year leaseholds are the equivalent of a fee ownership for the purposes of real property taxation, valuation and assessment." Consequently, we upheld the Township's right to tax the leaseholds. Id. at 258, 448 A.2d 475. The Legislature has also treated such leasehold interests as freeholds. We note, in particular, N.J.S.A. 46:15-5(c), a portion of the statute governing the recording of deeds and instruments, which provides, in pertinent part, that "[i]n the case of a leasehold interest for 99 years or more . . ., the consideration shall be in the amount of the assessed value of the property at the date of the transaction for the purpose of levying local real property taxes ...." Another section of this statute states in part: "A *1250 leasehold interest for 99 years for more... shall be treated as a `freehold' for the purpose of this act." N.J.S.A. 46:15-5(a). Thus, it is clear that CMMI's leasehold, if not exempt, is subject to the local real estate tax.
Since statutes granting exemption from taxation "are most strongly construed against those claiming exemption," Town of Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966), it might seem, at first, that CMMI's situation falls outside the statute because it does not own the property; but, whether a 99-year leasehold should be treated as a freehold interest depends "on the legislative intent underlying the applicable statutory regime." City of Atlantic City v. Cynwyd Investments, 148 N.J. 55, 72, 689 A.2d 712 (1997) (holding that for condemnation purposes a 99-year lessee would not be considered a defacto owner because the time restraints in condemnation actions would make interpreting each lease agreement to discover the correct "owner" difficult). Or, as Justice Jacobs explained in Koester v. Hunterdon County Bd. of Taxation, 79 N.J. 381, 391, 399 A.2d 656 (1979), "proper statutory interpretation will ultimately turn `on the breadth of the objectives of the legislation and the commonsense of the situation.'" (citation omitted).
The ownership requirement of Section 3.6 was strictly construed in Young Men's Christian Ass'n of Garfield, N.J. v. State Bd. of Tax Appeals, 14 N.J. Misc. 831, 833, 186 A. 702 (1936), where the court held that the claimant "could not claim exemption as the owner of the equitable title." To put it differently, the case stands for the proposition that a contract to purchase real property will not support a claim for exemption under Section 3.6, even if the property is being used for a qualifying purpose. See City of Hoboken v. East German Annual Conference of Methodist Episcopal Church, 19 N.J. Misc. 266, 18 A.2d 718 (State Bd. of Tax Appeals 1941).
No court decision since Young Men's has construed Section 3.6's requirement of ownership. However, a like provision in another real estate tax exemption statute, since repealed, was considered in West Jersey Grove Camp Ass'n. v. Vineland, 80 N.J.Super. 361, 193 A.2d 785 (App.Div. 1963). The court held that the holders of 99-year non-renewable leases were not entitled to a partial exemption because the statute granted the exemption to senior citizens of limited income who resided in homes which they "owned." Id. at 365, 193 A.2d 785. Based on the rule that tax exemption statutes are strictly construed, the court reasoned as follows:
Had the Legislature wanted to confer the $800 exemption upon lessees circumstanced as are these claimants, it could have simply and expressly so provided. It did not. On the contrary, it limited the exemption to the senior citizen of limited income "residing in a dwelling house owned by him which is a constituent part of his real property." The 39 claimants do not fit that definition. They do not have fee title to their lots; their respective 99-year leases do not even qualify as a freehold estate.

[Ibid.]
The opinion concluded by suggesting that its ruling would not apply if the leases were renewable forever, ibid., citing the following statement from Black v. Delaware & Raritan Canal Co., 24 N.J. Eq. 455, 465 (E. & A. 1873): "For all substantial, practical purposes, a lease for nine hundred and ninety-nine years is a conveyance in fee."
This is not a situation in which the statutory language is ambiguous. To "own" property means to have "legal title" to it. Black's Law Dictionary, 1130 (7th Ed.1999). But that settled proposition, by *1251 itself, does not control the issue at hand if literal application would lead to a result incompatible with the legislative purposes. The expansive nature of our duty in this regard was thoughtfully expressed by Chief Justice Weintraub in New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957) (citations omitted):
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms."
The most obvious purpose of Section 3.6's requirement that the nonprofit entity own the property for it to be exempt is to prevent individuals or entities involved in business from avoiding real estate taxes by leasing their property for customary periods to entities which would otherwise qualify for the exemption. But a 99-year lease is hardly customary, and it is extremely unlikely that a business would enter into such a lease merely to avoid taxation. Consequently, a construction of ownership to include 99-year leases would have no adverse effect on the legislative purpose.
Moreover, Section 3.6 has as an overarching purpose the encouragement of private sector work that will benefit mankind while lessening the burdens on the State. This is a far broader and more profound interest than giving senior citizens a modest tax break, as was the case in West Jersey Grove Camp. Assn., supra. Nor should we ignore the fact that this property is owned by a public entity, Essex County, which itself has an interest, on behalf of its citizens, in encouraging such work. At the same time, however, a county should be mindful of the need to preserve its ownership of property for future generations and the unpredictable circumstances they face. Here, Essex County has attempted to satisfy these different needs by entering into a 115-year lease with CMMI. And, on the assumption that it would have the exemption, an assumption shared by defendant at the beginning of the project, CMMI has expended millions of dollars on the property, much of which was received in grants from the federal government on the understanding that the property would be tax exempt.
The circumstances of this case in relationship to the concept of ownership may be fairly characterized as creating a situation unanticipated by the drafter of Section 3.6. Given the purposes of that section and the Legislature's recognition that a leasehold interest for 99 years or more should be subject to local property taxation, N.J.S.A. 46:15-5(c), we infer that Section 3.6's ownership requirement is satisfied by allowing for exemption in such cases, at least where the owner remains a public entity. Nonetheless, CMMI is still required to satisfy the other requirements of Section 3.6, a subject which we commit to the Tax Court. We express no opinion on the question whether, in the peculiar circumstances of this case, CMMI should be permitted to introduce additional evidence.
Reversed and remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] We note our inclination to disagree with the Tax Court's conclusion that the property was being used for a public purpose. However, we defer ruling on the issue because the county is not a party in these proceedings. Nonetheless, since the Tax Court's opinion has been published, we add the following comments. Although the concept of "public purpose" is to be construed liberally in this context, the purpose must be "directly related to the functions of government." Roe v. Kervick, 42 N.J. 191, 207, 199 A.2d 834 (1964). In other words, public purpose includes "any municipal [county, or other governmental] enterprise which the legislature has authorized." Township of Hanover v. Town of Morristown, 4 N.J.Super. 22, 24, 66 A.2d 187 (App.Div. 1949). In all of the cases granting an exemption under Section 3.3, the public purpose was tied to specific statutory authorization. See e.g., City of Newark v. Essex County Board of Taxation, 54 N.J. 171, 186, 254 A.2d 513 cert. denied, 396 U.S. 987, 90 S.Ct. 483, 24 L. Ed.2d 452 (1969); Borough of Moonachie v. Port of N.Y. Auth., 38 N.J. 414, 427, 185 A.2d 207 (1962); N.J. Turnpike Auth. v. Township of Washington, 16 N.J. 38, 44, 106 A.2d 4 (1954); Township of Holmdel v. NJ. Auth., 329 N.J.Super. 410, 419, 748 A.2d 128 (App.Div.2000); Jersey City v. N.J. Dept. of Envtl. Protection, 227 N.J.Super. 5, 15-18, 545 A.2d 774 (App.Div.), cert. denied, 111 N.J. 640, 546 A.2d 551 (1988); and Bergen County v. Leonia Borough, 14 NJ.Tax 142 (1994). In Township of Holmdel, we summarized the principle as follows:

It has been said, on the one hand, that governmental tax immunities "should be liberally construed." On the other hand, it has also been recognized that "[t]he taxing power lies at the heart of government" and, therefore, application of any particular tax immunity must "stand scrutiny" to demonstrate that it serves the intended public purpose, that is to say, that the object or activity for which the immunity is sought is within the boundaries of the governmental entity's statutory powers and within the provisions of the specific statute granting the asserted immunity.
[329 N.J.Super. at 418-19, 748 A.2d 128 (emphasis added) (citations omitted).]
The only source of statutory authority cited by the Tax Court is N.J.S.A. 52:9U-2, which concerns State support for cancer research; it provides no authority for counties to engage in that activity. Compare, for example, the following statutes designating activities which counties are permitted to pursue: N.J.S.A. 40:23-6.2 (camps for underprivileged children); N.J.S.A. 40:33-1 (libraries); N.J.S.A. 40:48-9.4 (senior citizen centers); N.J.S.A. 40:23-6.22 (museums); N.J.S.A. 40:43-2.1 (parks and hospitals); N.J.S.A. 40:23-8.21 (treatment of Cooley's anemia); and N.J.S.A. 40:23-8.22 to -8.23 (burn injury research). It would appear that the consistent legislative course has been to define with reasonable precision the public purposes of counties.
[2] The land exemption is described by Section 3.6 in this manner: "the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent[.]" In Fairleigh Dickinson Univ. v. Florham Park, 5 N.J.Tax 343 (1983), the maximum acreage was construed to mean "five acres of exempt land for each ... building if the land is reasonably necessary for [the] actual and exclusive [exempt] uses." Id. at 355. The court also concluded "that a structure is a building for the purpose of the five-acre exemption test even if a small part is attached to an adjoining structure and even though there may be a fire door connecting it with another structure." Id. at 356. As noted, CMMI leased 9.13 acres. Although we have referred to the structure in question as one building, arguably it could be treated as three connected buildings, each entitled to a maximum of five acres, even though their integration is greater than existed with respect to the structures in Fairleigh Dickinson Univ. However, the Tax Court made no findings with respect to any of the land aspects of this case, and we will express no opinion on the subject at this time.