NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
-------------------------------------------------------x
ATLANTIC CITY OPERA THEATER,          :
                                      :   TAX COURT OF NEW JERSEY
            Plaintiff,                :   DOCKET NO: 013513-2018
                                      :
     v.                               :
                                      :
CITY OF ATLANTIC CITY,                :
                                      :
            Defendant.                :
                                      :
-------------------------------------------------------x
```

Decided:  December 16, 2021.

Jacob S. Perskie for plaintiff (Fox Rothschild, L.L.P., attorneys; Robert P. Lang and Jacob S. Perskie, on the brief).

Anthony J. Marchese for defendant (Chiesa Shahinian Giantomasi PC, attorneys).

CIMINO, J.T.C.

The issue in this matter is whether the property in question meets the requirements for tax exemption.  Since there are unresolved credibility issues, the cross-motions for summary judgment are denied and the matter shall be set down for a trial.

In 2014, Bette Lazzaro purchased Lot 3 of Block 697 of the tax map of the City of Atlantic City located in the County of Atlantic.  The property is commonly known as 1619-17 North Mississippi Avenue and is located in the R-1 Residential

Zone. Atlantic City is a coastal resort community and the parties agree that there are many properties utilized as vacation homes along the New Jersey coast.

The property assessment card provided by the City indicates that there is a structure on the property described as a two-story colonial built in 1900. The structure has 4 bedrooms, 2.5 bathrooms and a total of 8 rooms. There is 1980 square feet on the first floor, 472 square feet on the upper floor and a basement area of 352 square feet. The total square footage of living space is 2,452 square feet. The size of the lot is less than a quarter acre, and measures 13,500 square feet.

On July 31, 2017, Ms. Lazzaro hand-prepared a fill-in-the-blank quitclaim deed. The deed transferred the property from her to "ATLANTIC CITY OPERA THEATER who is identified as the GRANTEE. 1619-17 N. MISSISSIPPI AVE, ATLANTIC CITY, NJ 08401 LIFE ESTATE WITH REMAINDER DEED, TO HUMANE SOCIETY INTERNATIONAL." The consideration for the transfer is listed as one dollar. It is unknown whether the Humane Society International is a profit or non-profit entity. Moreover, it is unknown whether Humane Society International has accepted the deed or is even aware of the deed.

The Atlantic City Opera Theater purports to be an unincorporated association formed by way of "Articles of Association." Curiously, the printed date on the Articles of Association is October 15, 2016, yet the handwritten date of signing by Ms. Lazzaro is October 30, 2014. The Association also listed four other individuals

as members. In addition, bylaws for the Atlantic City Opera Theater indicate adoption and approval by the Board of Directors on October 15, 2016. However, once again, the handwritten date of the signatures of Bette Lazzaro as President and Joann Baiano as Secretary is October 30, 2014. The Atlantic City Opera Theater obtained I.R.C. § 501(c)(3) exemption from federal income tax by way of letter dated October 4, 2016. An application for a I.R.C. § 501(c)(3) exemption requires the organizational documents and bylaws. 26 C.F.R. § 1.501(a)-1(b)(2), I.R.S. Form 1023, Part II (Rev. 12-2013). It is unknown whether there is a prior set of bylaws that have a printed date earlier than the I.R.C. § 501(c)(3) exemption approval of October 4, 2016, considering that the documents provided have a printed date of October 15, 2016. Nevertheless, the effective date of the federal exemption is October 30, 2014.

The Plaintiff asserts six performances were held at the property in 2017, nine were held in 2018, and six were held in 2019. It is unknown how many performances were held in 2020 and 2021, however, a curtailment of performances would be understandable in light of the COVID-19 outbreak and subsequently enacted social distancing measures which placed restrictions on certain public gatherings. See, e.g., Exec. Order No. 107 (Mar. 21, 2020); Exec. Order No. 152 (June 9, 2020).

In support of the appeal, the plaintiff submitted various pictures. In addition, when the assessor conducted the inspection, various pictures were taken and

provided to the court as well. On the outside, the property appears to be a two-story bungalow with limited parking.

On the first floor there is one large room that is connected by a wide arched doorway to another large room. Pushed against the walls of the room are the dining room table as well as sofas and side chairs which are arranged for the viewing of opera performances. Other furniture located in this space appears to be a grandfather clock, mirrors, table lamps, vases, a dining room table, a china cabinet, and a chest of drawers. In addition, there appears to be a multitude of different chairs - some dining room chairs and some other chairs - that have been made available for seating for about 15-20 people. Also, the photographs reveal fully furnished bedrooms with fully made-up beds, nightstands, and chests of drawers.

The pictures provided by the taxpayer clearly depict opera performances taking place before an audience. Many of the opera performers are in costume. To the casual observer, it would appear that someone is having an opera performance in their living and dining room. The only difference between this space and a lived-in area is that many of the furniture items have been pushed to the side to allow for greater seating capacity.

N.J.S.A. 54:4-3.6 which governs this case, provides in pertinent part:

> The following property shall be exempt from taxation . . .
> : . . . all buildings actually used in the work of associations
> and corporations organized exclusively for the moral and
> mental improvement of men, women and children . . .

provided, in case of all the foregoing, the buildings, or the lands on which they stand . . . are not conducted for profit. . . . The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question . . . .

[Ibid.]

This statute can be broken down into three primary criteria which are as follows: (1) the organization must be organized exclusively for the moral and mental improvement of men, women and children; (2) its property must be actually used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit. Paper Mill Playhouse v. Township of Millburn, 95 N.J. 503, 506 (1984).[1] ; see also Int'l Schs. Serv. v. Township of West Windsor, 207 N.J. 3, 16 (2011). In addition to these three primary considerations, the property must also be owned by the non-profit entity. Savage Mills Enters. v. Borough of Little Silver, 29 N.J. Tax 295, 306 (Tax 2016) (exemption denied when a property leased by for-profit entity to non-profit entity).

The first issue is whether the Atlantic City Opera Theater is organized exclusively for the moral and mental improvement of men, women and children. The organizational documents are quite curious. The organization is not

---

[1] At the time Paper Mill Playhouse was decided, the property had to be actually and exclusively used for a tax exempt purpose. See L. 1983, c. 224. Subsequently, the Legislature in 1985 removed the exclusivity requirement. L. 1985, c. 395.

incorporated as a not-for-profit entity. Rather, it is organized as an unincorporated association with five members, including Ms. Lazzaro, listed as the association members. Interestingly enough, New Jersey law requires an unincorporated association to have at least seven members to have legal standing. N.J.S.A. 2A:64-1. However, the organizational documents do indicate that the purpose is to provide opera theater. Notably, the Paper Mill Playhouse decision was rendered by the Supreme Court without any mention of the organizational documents. Rather, the Court focused upon what the Paper Mill Playhouse did. Paper Mill Playhouse, 95 N.J. at 512-514. This does not mean that in the appropriate case a court cannot examine the organizational documents as evidence towards establishing that the organization is exclusively created for an exempt purpose. See, e.g., Planned Parenthood v. City of Hackensack, 12 N.J. Tax 598, 604 (Tax 1992); Intercare Health Syss. v. Township of Cedar Grove, 12 N.J. Tax 273, 275 (App. Div. 1991).

The next prong is whether the property is actually used for a tax-exempt purpose. The taxpayer argues that it does not matter whether Ms. Lazzaro or someone else stays at the property so long as the opera is being conducted. At argument, counsel asserted that a summer long stay would not preclude finding an exemption, but was unwilling to commit one way or another to 360 overnights as precluding the exception.

-6-

Whether Ms. Lazzaro or others stay at the property has not been squarely addressed by either party. By way of certification dated January 14, 2021, Ms. Lazzaro asserts "[t]here are no tenants (either owners or renters) at the Property." Read closely, this statement does not indicate whether there "were" ever any tenants at the property prior to the date of signing of January 14, 2021, but only that there "are" presently no tenants. Not only is the statement temporally unclear, but it is vague in the use of the term "tenant." While it may or may not be true that there are not any tenants, whether there has been overnight guests, paying or not, has not been addressed. See, e.g., N.J.S.A. 2A:18-61.1 (short term guests at guest house are not tenants for purposes of Anti-Eviction Act.) Also, the indication that there are "no tenants (either owners or renters)" is unclear since it is unknown how an owner can be a tenant. In any event, it appears that the municipality admitted to this allegation, but it is unclear what they admitted to based upon the vagueness of the statement.

The tax assessor asserts that in the past the property has been used exclusively for residential purposes. The taxpayer asserts that the municipality has absolutely no proofs that the property is being used for anything else but opera performances. This raises some interesting issues as to the role of government in being able to rebut an assertion that may necessarily require an intrusion upon a taxpayer's privacy. In this case, Ms. Lazzaro filed a suit seeking a tax exemption after the City rejected her application. As part of the discovery process, the City requested to do an on-site

inspection of the interior of the property. No one is disputing that such an on-site inspection is appropriate considering that it was the taxpayer which brought the action. See R. 8:6-1(a)(4) (inspection of premises allowed for small claims cases); Standard Interrogatories to be Served on Taxpayer, N.J. Courts Form CN 10966 (Rev. 9/2008) (Question 23 dealing with inspections); R. 8:6-1(a)(5) (prescribing use of standard interrogatories in standard track case); R. 8:11(a)(2) (exemption case is not on small claims track).

The question that does arise is how far the government can go in trying to establish the residential status of the property. On one hand, there is the general interest of all taxpayers who would pay increased taxes if the property is improvidently removed from the tax rolls. On the other hand, there are the privacy concerns of the appealing taxpayer. Would it be appropriate for the taxing authorities to set up surveillance cameras to track the comings and goings from a property? While not possibly rising to the level of a constitutional concern, such surveillance tactics may raise some eyebrows and may be an activity that the City is reluctant to embark upon.[2] See, e.g., ABA Standards for Criminal Justice Electronic

---

[2] The court is not passing upon this issue. It should be noted that surveillance of commercial taxpayers can be an important and appropriate part of the gathering of evidence as to whether there is compliance with certain tax laws. See, e.g., Duncan Truck Stop v. Dir., Div. of Tax'n, 4 N.J. Tax 367, 371, 375 (Tax 1982).

Surveillance, Section B: (3rd ed. 1999) 64, 68-71 (discussing standard 2-9.3(b) concerning public video surveillance).

The sanctity of private dwellings is ordinarily afforded the most stringent Fourth Amendment protection. N.J. Dep't of Env't Prot. v. Huber, 213 N.J. 338, 358 (2012) (citing United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976)). Moreover, the Fourth Amendment protects commercial buildings as well as private homes. Marshall v. Barlow's, Inc., 436 U.S. 307, 311 (1978). With that in mind, once inside the premises, would it be appropriate for the assessor to start rifling through the drawers and cabinets looking for clothing and personal effects such as toothbrushes to establish the property is in residential use? While the drawers may or may not contain relevant evidence, a search of same seems beyond the consent which a taxpayer grants for an inspection as part of the discovery process regardless of whether the property is residential or commercial. See State v. Younger, 305 N.J. Super. 250, 257 (App. Div. 1997) (quoting Kevin G. Byrnes, N.J. Arrest, Search & Seizure § 16.4 (1996)) (describing for example, how it would be unreasonable to search desk drawers upon receiving consent to search for a stolen grand piano).

With the foregoing in mind, the Court is reluctant to grant summary judgment determining all requirements for exemption are met just because the representative of taxpayer says so. Looking at the photographs of the interior of the property, which plainly reveal a residential living set-up as well as recognizing the concerns that a

governmental entity may have confirming the extent of residential use of the property, the decision here turns squarely upon the testimony of Ms. Lazzaro. Yes, it is true that she does conduct opera performances, but these performances only happen a handful of times each year. But for the sofas and chairs being rearranged to allow more visitors, the furnishings are plainly residential and also include fully furnished and outfitted bedrooms. As plainly stated by the Appellate Division:

> Any issues of credibility must be left to the finder of fact. That is so even where a witness's testimony is uncontradicted, as long as, when considering the testimony in the context of the record, persons of reason and fairness may entertain differing views as to its truth. Summary judgment should be denied unless the right thereto appears so clearly as to leave no room for controversy.
>
> [Akhtar v. JDN Props. at Florham Park, LLC, 439 N.J. Super. 391, 399 (App. Div. 2015) (citations omitted).]

As said long ago by our Supreme Court "[w]here men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury." Ferdinand v. Agricultural Ins. Co., 22 N.J. 482, 494 (1956). "[A] trier of fact 'is free to weigh the evidence and to reject the testimony of a witness, even though not directly contradicted, when it contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to its truth.'" D'Amato by McPherson v. D'Amato, 305 N.J.

Super. 109, 115 (App. Div. 1997) (citing In re Estate of Perrone, 5 N.J. 514, 521-22 (1950)).

Here, the taxpayer asserts that the only proofs are that the property is used as an opera theater. More correctly stated is that the only testimonial proofs at this stage indicate that the property is used as an opera theater. These testimonial proofs have not been subjected to the rigors of cross-examination and an evaluation by the trier of fact. Other proofs establish that the use of the property is residential in character. There are the furnishings of the living room, including the sofas and side chairs, as well as a dining room table and cabinet, and the fully outfitted bedrooms with blankets and covers, drawers and such. Plaintiff argues that the court should ignore the residential setup at the property. If plaintiff's argument is correct, there is the valid concern for mischief in that anyone who has a gathering a few nights a year at a vacation home for purposes of moral and mental improvement may qualify for a tax exemption. The types of gatherings which qualify would be boundless and would include book clubs, exercise and yoga classes, certain knitting clubs making goods for the needy, scouting meetings, and acting clubs. Certainly, this is not something that the Legislature intended.

On the other hand, maybe Ms. Lazzaro truly is an aficionado of the arts, and purchased this property to further the moral and mental improvement of individuals by offering classical opera. Certainly, at the end of the day it turns upon a credibility

determination and it would not be proper for this Court to make such a determination on the papers alone. Since this matter turns on credibility, and credibility is not susceptible by resolution by summary judgment, both party's motions for summary judgment are denied.

There is one other issue as to the ownership of the property. Ms. Lazzaro transferred the property to the Atlantic City Opera Theater indicating a life estate and then to Humane Society International. It is unsure as to whether the Humane Society International is actually a non-profit. Moreover, it is unclear upon whose life the life estate is measured. However, the question is whether a life estate constitutes the type of ownership that qualifies for the exemption. The Legislature plainly requires ownership of the property to obtain a tax exemption. N.J.S.A. 54:4-3.6 (second sentence).

In Savage Mills Enters., the non-profit entity had a 99-year ground lease from a for-profit entity. Savage Mills Enters., 29 N.J. Tax at 297. The court noted that "the most obvious purpose of Section 3.6's requirement that the nonprofit entity own the property for it to be exempt is to prevent individuals or entities involved in business from avoiding real estate taxes by leasing their property for customary periods to entities which would otherwise qualify for the exemption." Id. at 307 (citing Ctr. for Molecular Med. & Immunology v. Township of Belleville, 357 N.J. Super. 41, 53-54 (App. Div. 2003)). The Court went on further to note that the whole

idea of a tax exemption is to relieve the nonprofit entity from the burden of paying taxes. If the property is actually owned by a for-profit entity with the statutory burden of paying the taxes, the exemption would not serve its purpose. As a result, the Court denied the tax-exempt status.

What we have here is not a 99-year lease but a life estate, which if based upon the life of Ms. Lazzaro, would certainly be less than 99 years. There are two counter-vailing arguments as to whether a life estate would constitute ownership. On one hand, a life tenant has obligations to the remainderman including keeping the property in good repair and paying the taxes. In re Estate of Roth, 139 N.J. Eq. 588, 596 (Prerog. Ct. 1947). Thus, even if the Atlantic City Opera Theater no longer had a use for the property, it may face certain obligations before passing the property on to the remainderman. The fact that the remainderman is a nonprofit entity or not is of no consequence. In other words, the funds of the Atlantic City Opera Theater could potentially be used to indirectly fund the owner of the remainder estate through payment of repairs and taxes. This sort of entanglement of interest certainly weighs against granting the tax exemption. Int'l Schs. Servs., 207 N.J. at 23.

On the other hand, this court stated early on that "[t]he right of the life tenant to the undisturbed possession and enjoyment of the property during the continuance of his life estate is substantially the same as that of an owner in fee (the only

difference being that the life tenant cannot commit waste)." <u>Sheppard v. Township of Willingboro</u>, 1 N.J. Tax 530, 534 (Tax 1980).

The problem is that both positions are anchored in archaic and ancient authority dealing with issues such as life estates, waste, and what constitutes a freehold estate. Rather than wander into the murky waters of ancient common law real property concepts, the court will defer until it first determines the credibility issue as to use of the premises as more fully set forth above.

**CONCLUSION.**

For the foregoing reasons, the motions for summary judgment filed by both parties are DENIED.