NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

---------------------------------------------------------x

TOWNSHIP OF LAKEWOOD,         :

                                 :    TAX COURT OF NEW JERSEY

                                 :    DOCKET NO: 012086-2020

                 Plaintiff,      :

        v.                        :

                                   :

CONGREGATION OHR MEIR INC,    :

                                 :

               Defendant.   :

---------------------------------------------------------x

---------------------------------------------------------x

PRIESTLY SOCIETY OF BLESSED   :

JOHN HENRY CARDINAL NEWMAN,  :    TAX COURT OF NEW JERSEY

                                 :    DOCKET NO:  009257-2022

                 Plaintiff,      :                     007482-2023

                                   :                     007982-2025

        v.                        :

                                 :

BOROUGH OF PINE BEACH,      :

                                 :

               Defendant.   :

---------------------------------------------------------x

Decided March 25, 2026.

Mark Lamartina for Township of Lakewood (Cleary, Giacobbe, Alfieri & Jacobs, LLC, attorneys).

Amber N. Heinze for Congregation Ohr Meir Inc. (Heinze Law, PA, attorneys).

Farhan Ali for Priestly Society of Blessed John Henry Cardinal Newman (McCarter & English, LLP, attorneys).

Martin Allen for Borough of Pine Beach (DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys; Martin Allen, Kevin A. McDonald and Wesley E. Buirkle, on the brief).

CIMINO, J.T.C.

I.    Introduction

The issue in both these cases is whether the officiant's residence of a religious congregation is exempt from property taxes despite the officiant having a personal financial stake in the residence.

II.    Congregation Ohr Meir

Rabbi Yitzchok Rokowsky resides at 274 Ridge Avenue in the Township of Lakewood designated as Block 236.02, Lot 1 on the tax maps.  The property record card reflects a one family residence of 8,900 square feet.  On July 24, 1997, Royco, LLC purchased the property.   Royco is a for-profit limited liability corporation for which Rabbi Rokowsky is manager.   On September 29, 2008, Royco, LLC transferred the property to Congregation Ohr Meir, Inc.  Rabbi Rokowsky signed the deed on the behalf of Royco, LLC.

Simultaneous with the execution of the deed, Congregation Ohr Meir, Inc. executed a mortgage to Rabbi Rokowsky securing the amount of $1.5 million.  Rabbi Rokowsky signed the mortgage as president of Congregation Ohr Meir, Inc.  Despite the passage of eighteen years since the execution of the mortgage, no payments have been made, and Rabbi Rokowsky has not declared a default.   Rabbi Rokowsky asserts that he cannot locate the note.  Without any exemption, the property faces taxes based upon an assessed value of $1.3 million.

2

III.    Priestly Society of Blessed John Henry Cardinal Newman

Father Peter M.J. Stravinskas resides at 601 Buhler Court in the Borough of Pine Beach designated as Block 36, Lot 1.18 on the tax maps.  As indicated on the record, the site is improved with a 3,600 square foot residence.  Father Stravinskas purchased the property on November 29, 2007, for the stated consideration of $740,000.  In conjunction with the purchase, he executed a mortgage in favor of a commercial bank for $592,000.    Father Stravinskas is the officiant of the Priestly Society of Blessed John Henry Cardinal Newman.

On January 31, 2017, a creditor of Father Stravinskas obtained a judgment in the Court of Common Pleas of Monroe County, Pennsylvania, for $345,000.  The creditor docketed the judgment in New Jersey on July 5, 2017, as a statewide lien against all real estate held by Father Stravinskas.  See N.J.S.A. 2A:16-1, 2A:49A-27. On August 10, 2018, Father Stravinskas deeded the home to the Priestly Society.

The creditor filed a fraudulent transfer action.  The matter settled on the following terms: 1) payment of $125,000 to the creditor, 2) property will transfer to the creditor upon Father Stravinskas' death or him moving from the property, 3) Father Stravinskas will continue to maintain the property, and 4) the docketed judgment remains in place.  In addition, the Priestly Society executed a deed dated March 26, 2025, to the creditor.  The creditor is to hold the deed in trust for recording upon Father Stravinskas' death or moving from the property.  The creditor later

assigned the docketed judgment as well as the settlement agreement to another creditor.

IV.    Legal Conclusions

These matters come before the court on motions by all parties for summary judgment as to real property tax exemptions.  On summary judgment, the court must assess "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  While not a per se rule, "[t]he filing of a cross-motion for summary judgment generally limits the ability of the losing party to argue that an issue raises questions of fact, because the act of filing the cross-motion represents to the court the ripeness of the party's right to prevail as a matter of law." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div. 2008).  However, cross-motions do not compel the granting of summary judgment one way or the other.  Ibid.

Real estate property taxes are the bedrock of local taxation in New Jersey. Local taxation supports a number of not for profit governmental activities such as trash collection, police protection, road maintenance and schools.  Support of these governmental activities is vital and generally supports all taxpayers one way or another.

4

Exemption from local taxation is narrowly and strictly construed. Int'l Schs. Servs., Inc. v. Township of West Windsor, 207 N.J. 3, 15 (2011); Bentz v. Township of Little Egg Harbor, 31 N.J. Tax 209, 220 (App. Div. 2019). The party seeking the exemption bears the burden of proof. Int'l Schs. Servs., 207 N.J. at 15. These principles foster the "well-established policy that 'the public tax burden is to be borne fairly and equitably.'" Advance Hous., Inc. v. Township of Teaneck, 215 N.J. 549, 566 (2013) (quoting Int'l Schs. Servs., 207 N.J. at 15).

Nonetheless, the Legislature has decided to provide an exemption for certain nonprofit organizations. N.J.S.A. 54:4-3.6. These exemptions include "all buildings actually used in the work of associations and corporations organized exclusively for religious purposes . . . ." and "the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State . . . ." Ibid. The seminal three-part test for establishing an exemption requires that the organization must be organized exclusively as a nonprofit, its property is actually used for a nonprofit purpose, and its use and operation of the property is not for profit. Int'l Schs. Servs., 207 N.J. at 16 (citing Paper Mill Playhouse v. Township of Millburn, 95 N.J. 503, 506 (1984)).

While the three-part test examines the eligibility for the exemption under the first sentence of N.J.S.A. 54:4-3.6, there is a second sentence that provides in pertinent part "[t]he foregoing exemption shall apply only where the association,

5

corporation or institution claiming the exemption <u>owns</u> the property in question . . . ." N.J.S.A. 54:4-3.6 (emphasis added).

The Legislature did not define the term "owns" in the second sentence of N.J.S.A. 54:4-3.6. Our courts have generally required legal title as the baseline indicia of a nonprofit's ownership. <u>Ctr. For Molecular Med. & Immunology v. Twp. of Belleville</u>, 357 N.J. Super. 41, 53 (App. Div. 2003). However, ownership is more than just holding legal title. It is about having full dominion over the property, that is, having the right to do whatever an owner sees fit. <u>Ziegler v. Sutphin</u>, 1 N.J. Super. 147, 150 (App. Div. 1948). This includes the right to dispose of the property. <u>Ibid.</u>

A narrow focus upon the status of legal title alone does not ordain an outcome, especially if the outcome is incompatible with legislative purposes. <u>Ctr. For Molecular Med.</u>, 357 N.J. Super. at 53. For example, in <u>Center for Molecular Medicine</u>, while the nonprofit did not have legal title, by virtue of a long-term 115-year lease, it had sufficient dominion and control to establish ownership.[1] <u>Id.</u> at 53-54.

However, there are not any decisions addressing a nonprofit with legal title, but lacking full dominion and control of the property. "[P]roper statutory interpretation will ultimately turn on the breadth of the objectives of the legislation

---

[1] A business relinquishes significant dominion and control with a lease of 99 or more years. "[I]t is extremely unlikely that a business would enter into such a lease merely to avoid taxation." <u>Ctr. For Molecular</u>, 357 N.J. Super. at 54.

and the commonsense of the situation." Id. at 52 (quoting Koester v. Hunterdon County Bd. of Tax'n, 79 N.J. 381, 391 (1979)). Relying upon a prior holding of our Supreme Court, the Appellate Division in Center for Molecular Medicine explained the "expansive nature of [the court's] duty." 357 N.J. Super. at 53. The court reiterated:

> It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation of the judiciary to give effect to the obvious purpose of the Legislature, and to that end words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.
>
> Ibid. (quoting New Capitol Bar & Grill Corp. v. Div. of Emp. Sec., 25 N.J. 155, 160 (1957)).

The obvious legislative purpose of N.J.S.A. 54:4-3.6's requirement that the nonprofit own the property is to prevent individuals or businesses from enjoying an undeserved exemption from local property taxes. Ctr. For Molecular Med., 357 N.J. Super. at 53-54. An individual or business cannot thwart this safeguard by nominally transferring legal title to a nonprofit while maintaining a material degree of dominion or control over the property. Legal title cannot be used as a subterfuge to obfuscate true ownership of the property.

7

This concept of looking beyond legal title is not foreign to either our courts or Legislature. Even in ancient times, legislatures and courts untethered themselves from the strictures of legal title. Geroge L. Haskins, The Development of Common Law Dower, 62 Harv. L. Rev. 42 (1948). Dower, originally part of the common law of England and codified by our Legislature in 1799, allowed a spouse to claim a one-third, and later one-half, share for life of a husband's real estate upon the death of her spouse regardless of title.[2] See L. 1798, c. 753, § 1. See also L. 1927, c. 68, § 1 (increasing share to one-half). Effective in 1980, dower was supplanted by an elective share based upon Uniform Probate Code provisions. Carr v. Carr, 120 N.J. 336, 344 (1990). N.J.S.A. 3B:28-1, -2. This allowed a spouse to claim a one-third augmented share of the deceased spouse's estate despite attempts by the deceased spouse to control the disposition. N.J.S.A. 3B:8-1.

The concept of looking beyond legal title has been extended beyond the death of a spouse. With equitable distribution in divorce, a spouse can claim a fair share of the assets accumulated during the marriage despite legal title. Roselin v. Roselin, 208 N.J. Super 612, 616 (App. Div. 1986). This prevented an overcontrolling husband from holding title to all assets and leaving a wife destitute and a potential burden on her family or the state.

---

[2] Dower is so ancient, that it is mentioned in the Magna Carta. Magna Carta ch. 7 (1215) (translated in E.S. Creasy, The Rise and Progress of the English Constitution 133 (1853)).

Likewise, this court does not slavishly rely upon the ancient concepts of legal title to definitively determine ownership. While undoubtedly an important indicia of ownership, legal title alone cannot bind this court into mandating an exemption for a property nominally titled to a nonprofit, but actually owned and controlled by individuals or businesses. The court needs to be faithful to the legislative mandate of only awarding exemptions for properties owned by the nonprofit alone.

Based upon the foregoing, the court examines whether Rabbi Rokowsky and Father Stravinkas exercised dominion and control of their residences despite the transfer of legal title. Looking to dominion and control is also not foreign to the law. Dominion and control have been examined to determine when there is a valid and irrevocable gift. The basic elements of a valid gift are delivery, intent and acceptance. Bhagat v. Bhagat, 217 N.J. 22, 40 (2014). However, the law requires more. Sometimes described as a fourth element, the law requires an absolute and irrevocable relinquishment of ownership and dominion. Ibid. (citing In re Dodge, 50 N.J. 192, 216 (1967)). As explained in the leading Supreme Court decision of In re Dodge, "[t]he requirement[] of . . . surrender of dominion and control [is a] protective device[] long since demanded by the law in order to make certain that the donor clearly . . . understood that the thing given was irretrievably gone." 50 N.J. at 216–17. A "donor must strip himself absolutely and irrevocably of all dominion and control over the subject matter of the gift." Dierksen v. Albert, 106 N.J. Super. 220,

224 (App. Div. 1969). Proof of a gift must be "clear, cogent and persuasive." Bhagat, 217 N.J. at 41.

Rabbi Rokowsky and Father Stravinkas not only continue to reside in the premises, but also continued to possess and control financial interests in the premises. As explained below, both failed to strip themselves absolutely and irrevocable of all dominion and control. As a result, both are owners under the exemption statute.

With the transfer of his residence to the congregation, Rabbi Rokowsky took back a mortgage. Per the terms of the mortgage, there is nothing stopping Rabbi Rokowsky from declaring the congregation in default now or at any time in the future. If Rabbi Rokowsky was to have a falling out with his congregation, he could foreclose and take back legal title. Upon his death, his heirs in liquidating his estate, could foreclose upon the mortgage and take back legal title. In addition, either Rabbi Rokowsky or later his estate, could sell the mortgage on the residence to a third party for value. As demonstrated by all three scenarios, Rabbi Rokowsky has not exercised an absolute and irrevocable relinquishment of dominion and control of the property. Rather, despite the subterfuge of a mortgage, the property is still an asset of Rabbi Rokowsky. The deed along with the mortgage merely shifts the legal title with the hopes of opening the door to a property tax exemption. Despite the legal

10

title, Rabbi Rokowsky still controls and thus "owns" this residence for all intents and purposes. Certainly, the Legislature did not contemplate such a result.

Father Stravinskas purchased his residence by executing a note for $592,000 with a commercial bank. A mortgage on the property secures repayment of the note. Some eleven years later, Father Stravinskas transferred legal title to the congregation. However, the residence is encumbered by the mortgage that secures the personal obligation of Father Stravinskas to repay the $592,000. Certainly, without the security of the mortgage provided by the residence, the bank would have been unwilling to lend him the money. Thus, he continues to exercise dominion over the property as collateral for a loan for which he is personally liable.

Shortly before Father Stravinskas transferred the property to the congregation, a creditor entered a judgment lien against him for $345,000. The judgment serves as a lien against the property, albeit in second position after the mortgage. The lien secures payment of Father Stravinskas' personal debt. The settlement of a fraudulent transfer act action brought by the creditor accentuates how he continues to utilize the property to satisfy a personal debt. Namely, rather than paying the debt off from his personal assets, the lien remains attached to the property. In addition, upon his death or moving, the property will transfer to the creditor. Finally, a deed dated March 26, 2025, was executed by the congregation transferring the property to the creditor. Despite legal title, the property serves as an asset securing the personal

11

debts of Father Stravinskas. Once again, the Legislature certainly never contemplated such a result for an exempt property.

Rabbi Rokowsky and Father Stravinskas have definitive ownership interests in the properties which substantially inure to their benefit. This is not to say that a nonprofit cannot obtain a mortgage at arms-length to purchase a property. That is not what has happened here. Rather, both Rabbi Rokowsky and Father Stravinskas maintained dominion and control of the respective properties to secure personal financial interests, either in the future or for the forbearance of creditors.

As the old adage goes, charity begins at home. However, one does not get to convert their home into a charity. Both transfers had strings attached that ensured Rabbi Rokowsky or Father Stravinskas maintained dominion and control of the respective properties for their own personal interests. Rabbi Rokowsky held a mortgage which inured to his personal benefit. The personal debts of Father Stravinskas, both the mortgage note and the judgment, stripped equity from the property. The Legislature requires that the nonprofit own the property, not share dominion and control, and thus ownership, with others for personal financial benefit.

V.     Conclusion

For the foregoing reasons, the court grants summary judgment in favor of the respective municipalities as to the exemption issue. Likewise, the court denies the taxpayers' motions for summary judgment.

12