TAX COURT OF NEW JERSEY



**MARY SIOBHAN BRENNAN**
**JUDGE**

495 Martin Luther King Blvd., Fourth Floor
Newark, New Jersey 07102
609 815-2922, Ext. 54560
Fax: 609 815-3079

May 5, 2023

James M. Parisi, Attorney at Law
Murphy McKeon, P.C.
51 Route 23 South
P.O Box 70
Riverdale, New Jersey 07457

Alexander J. Corrado, Attorney at Law
Florio Kenny Raval, L.L.P.
125 Chubb Avenue
Suite 310 N
Lyndhurst, New Jersey 07071

> Re: **Jersey City Two, LLC v. Jersey City**
>
> Docket Nos.: 012480-2020, 012481-2020, 012482-2020, 012483-2020, 009826-2021, 009827-2021, 009828-2021, 009825-2021
>
> Block 20502, Lot 85
> Block 26203, Lot 52
> Block 26801, Lot 23
> Block 26201, Lot 34
> Block 26201, Lot 35

Dear Mr. Parisi and Mr. Corrado:

This letter opinion sets forth the court's ruling on defendant Jersey City's motions for summary judgment and plaintiff Jersey City Two, LLC's cross-motions for summary judgment. At issue is whether the real property in question is exempt from local property tax for tax years 2020 and 2021 pursuant to N.J.S.A. 54:4-3.6.


Interpreter


ADA
Americans with
Disabilities Act


ENSURING
AN OPEN DOOR TO
JUSTICE



**I. *Procedural History***

Jersey City Two, LLC ("Plaintiff" or "Taxpayer") is a New Jersey limited liability company formed under the New Jersey Limited Liability Company Act.[1] Plaintiff owns the following five (5) parcels of real property (collectively the "Subject Properties") located in Jersey City ("Defendant" or "Municipality"):

1.  141 McAdoo Avenue, Jersey City, New Jersey (Block 26201, Lot 34) (SP#1);

2.  139 McAdoo Avenue, Jersey City, New Jersey (Block 26201, Lot 35) (SP#2);

3.  196 Boyd Avenue, Jersey City, New Jersey (Block 20502, Lot 85) (SP#3);

4.  348 Danforth Avenue, Jersey City, New Jersey (Block 26203, Lot 52) (SP#4); and

5.  337 Danforth Avenue, Jersey City, New Jersey (Block 26801, Lot 23) (SP#5);

On or about November 1, 2019, Plaintiff submitted applications to the Municipality for property tax exemptions for the Subject Properties for tax year 2020. The Municipality denied Plaintiff's applications, which Plaintiff then appealed to the Hudson County Board of Taxation ("County Board") on April 16, 2020. On November 9, 2020, the County Board affirmed the denials without prejudice.[2] On November 13, 2020, Plaintiff filed appeals in the Tax Court.

---

[1] The New Jersey Limited Liability Company Act, N.J.S.A. 42:2B-1 to -70, was repealed by L. 2012, c. 50. The Revised Uniform Limited Liability Company Act, N.J.S.A. 42:2C-1 to -17, L. 2012, c. 50 (eff. March 18, 2013), now governs New Jersey limited liability companies, regardless of their date of formation. See N.J.S.A. 42:2C-91.

[2] On May 28, 2020, Governor Murphy signed P.L. 2020, c. 35 into law. This law extended the filing deadline for tax year 2020 property tax appeals at the county boards of taxation in counties operating under the "traditional" assessment calendar from April 1, 2020 (May 1, 2020 for municipalities undergoing a revaluation or reassessment) to July 1, 2020. County boards of taxation operating under that calendar had until September 30, 2020 to render decisions on the appeals before them. It is assumed that the Hudson County Board of Taxation received an extension of this deadline from the New Jersey Division of Taxation.

On November 1, 2020, Plaintiff submitted applications to the Municipality for property tax exemptions for the Subject Properties for tax year 2021. Again, the Municipality denied Plaintiff's applications, which Plaintiff appealed to the County Board on March 23, 2021. On June 7, 2021, the County Board affirmed the denials without prejudice. On June 15, 2023, Plaintiff filed appeals in the Tax Court.

On February 17, 2023, the Municipality filed its Motions for Summary Judgment, seeking dismissal of Plaintiff's Complaints with prejudice.[3] The Municipality argues that, based on the plain language of Plaintiff's Certificate of Formation, Plaintiff is not organized exclusively for a tax-exempt purpose; therefore, it does not satisfy the criteria for exemption under N.J.S.A. 54:4-3.6.

On March 21, 2023 Plaintiff filed Opposition to the Municipality's motions and filed cross-motions for summary judgment requesting that the court declare the Subject Properties exempt from local property tax for tax years 2020 and 2021. The court received a reply brief and opposition to the cross-motion from Defendant on April 21. 2023. The court received Plaintiff's reply to Defendant's opposition on May 3, 2023.[4] The court held oral argument on May 5, 2023.

---

[3] R. 4:46-2(a) states that summary judgment motions shall be served with a separate statement of material facts set forth in separately numbered paragraphs. Defendant's Motion for Summary Judgment included a statement of material facts within its Legal Brief written in narrative style. Since the parties did not disagree about any material facts, and because Plaintiff did not raise the issue, the Court will exercise its discretion pursuant to R. 1:1-2(a) and relax the requirements of the rule; however, the Court cautions that such nonadherence to the court rule may in the future result in a denial of the motion for summary judgment without prejudice.

[4] Citing the court rule, on May 4, 2023, Defendant filed an objection to the late filing of Plaintiff's response to Defendant's opposition to Plaintiff's cross-motion for summary judgment and requested that it be stricken from the record. The Court will exercise its discretion pursuant to R. 1:1-2(a) and relax the filing deadline requirements of the rule, as there is no indication that its contents disclosed new facts or law.

## II. *Findings of Fact*

Pursuant to <u>R.</u> 1:7-4, the court makes the following findings of fact and conclusions of law based on the pleadings of record, the certifications, and the exhibits submitted by the parties.

In October 2007, Plaintiff was created as a legal entity by virtue of a one-page Certificate of Formation. In this document, Plaintiff expresses its legal purpose as performing "any lawful purpose except that of banking and insurance." The Certificate contains a provision that the Plaintiff will have one or more members. The document is void of any reference to non-profit activity or purpose.

By deed dated December 7, 2007, Plaintiff purchased SP#1[5] for $695,000. By deed dated March 3, 2009, Plaintiff purchased SP2[6] for $695,000.

Subsequently, on March 12, 2008, Plaintiff executed a Financing, Deed Restriction and Regulatory Agreement with the New Jersey Housing and Mortgage Finance Agency ("NJHMFA") in connection with property SP#1[7]; and on March 3, 2009 in connection with property SP#2[8]

On December 9, 2010, Plaintiff entered into an Operating Agreement with Start Easy Eagle Development Corp. (SEED Corp.) as its sole member. SEED Corp. had been formed on August 25, 2006 as a nonprofit corporation pursuant to the provisions of the New Jersey Nonprofit Corporation Act Title 15A:1-1 et seq. Its Certificate of Incorporation states that:

---

[5] The deed for this property submitted as part of the moving papers state the property to be Block 1274 Lot 125. The block and lot were updated to Block 26201 and Lot 34 on January 16, 2020, which matches the Case Information Statement and Complaint.

[6] The deed for this property submitted as part of the moving papers state the property to be Block 1274 Lot 126. The block and lot were updated to Block 26201 and Lot 34 on January 16, 2020, which matches the Case Information Statement and Complaint.

[7] Listed as Block 1274 Lot 125 in the Agreement.

[8] Listed as Block 1274 Lot 126 in the Agreement.

4

[t]he purposes of the corporation shall be: "(a) to provide affordable, low-income housing to clients of Advance Housing, Inc., a New Jersey not-for-profit corporation; (b) to acquire, rehabilitate and develop single-family, multi-family, apartment units, such other units and other real estate which will help enhance the operations and services of Advance Housing, Inc.; (c) to promote equal access to and expansion of housing opportunities in all of the counties of operations by Advance Housing, Inc. for all persons including those with special needs and low- and moderate-income members of the general public; (d) to encourage broad-based community support and participation in developing low-income housing; (e) to promote construction of low- and moderate-income housing; (f) to encourage community awareness of the need for non-discriminatory housing for special needs groups; (g) to apply for funds for acquisition, construction, rehabilitation or renovation of affordable housing; and (h) to engage in any other activity permitted by corporations organized pursuant to Title 15A, Corporation, Nonprofit of the New Jersey Statutes.

Said corporation is organized exclusively for charitable, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code (the "Code"), or corresponding section of any future federal tax code."

Organized exclusively for non-profit purposes, no part of any net earnings inures to the benefit of any SEED Corp. trustee or officer. The Certificate of Incorporation authorizes SEED Corp. to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of its stated purposes; however, no substantial part of the organization's activities shall be the carrying on of propaganda, engaging in political activity, or otherwise attempting to influence legislation. The organization has a minimum of three trustees, none of whom receives compensation. The Internal Revenue Service has approved SEED Corp. as a 501(c)(3) organization and not a private foundation within the meaning of section 509(a) of the Internal Revenue Code.

SEED Corp.'s Mission Statement states: "Our mission is to expand the range and scope of affordable housing opportunities available to persons with disabilities. In addition, SEED Corp.,

5

will seek to make similar options and services available to other individuals who are in need of affordable housing. All housing will meet or exceed housing quality standards and will incorporate green and sustainable features whenever possible."

On February 9, 2009, SEED Corp. enacted By-Laws to establish rules and procedures for conducting operations. Those By-Laws enumerated the specific purposes of the organization as follows:

A. To provide affordable, decent, low-income housing to clients of the Corporation and other entities:

B. To acquire, rehabilitate, and develop single-family, multi-family, apartment units, other such units and other real estate which will help enhance the operations and services of the Corporation and other entities;

C. To promote equal access to and expansion of housing opportunities in all the counties of operations by the Corporation for all persons including those with special needs and low-and moderate-income members of the general public;

D. To encourage broad-based community support and participation in developing low-income housing;

E. To promote construction of low- and moderate-income housing, and provide consulting services;

F. To encourage community awareness of the need for non-discriminatory housing for special needs groups;

G. To apply for funds for acquisition, construction, rehabilitation, or renovation of affordable housing; and

H. To engage in any other activity permitted by corporations organized pursuant to Title 15A, Corporation, Nonprofit of the New Jersey Statutes.

As established above, both SEED Corp. and Plaintiff were separately established entities prior to their enacting the 2010 Operating Agreement. Despite this, the 2010 Operating Agreement between Plaintiff and SEED Corp. states that SEED Corp. (identified as "Member") "hereby forms a limited liability company pursuant to and in accordance with the New Jersey Limited Liability

6

Company Act…" and that the name of the limited liability company "formed hereby is JERSEY CITY TWO, LLC (identified as the "Company")."

Furthermore, the Operating Agreement states that the Plaintiff "is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to foregoing."

Plaintiff describes itself as a real estate holding company of the Subject Properties for SEED Corp. Plaintiff claims that its actual operations are limited to SEED Corp.'s exempt purpose, and that Plaintiff does not have a separate and distinct purpose from SEED Corp. Plaintiff allocates all its profits and losses to SEED Corp as Plaintiff's sole member. Plaintiff highlights the fact that, to obtain HUD[9] funding to purchase and rehabilitate the Subject Properties, SEED Corp. was required to form a limited liability company. Plaintiff also serves to keep the Subject Properties separate from other properties owned by SEED Corp. and/or other subsidiaries. Furthermore, Plaintiff states that its operation is sufficiently integrated with that of SEED Corp.'s to be an integral part of the operations of SEED Corp.

On June 16, 2011, SEED Corp. purchased SP#3. SEED Corp transferred ownership of SP#3 to Plaintiff by deed dated September 21, 2012. On the same date as the transfer of ownership, Plaintiff executed a Financing, Deed Restriction and Regulatory Agreement with NJHMFA in connection with property SP#3.

On August 24, 2011, SEED Corp. purchased SP#4, and on February 17, 2012, SEED Corp. purchased SP#5. On April 1, 2015, SEED Corp. transferred ownership of both properties to

---

[9] HUD is an acronym for the United States Department of Housing and Urban Development.

Plaintiff. On the same date as the transfer of ownership, Plaintiff executed a CDBG[10] Loan Agreement and Deed Restriction with NJHMFA in connection with properties SP#4 and SP#5.

Plaintiff recorded all agreements for the Subject Properties with Hudson County. The agreements all contain a Deed Restriction which restricts the use of the properties to residential rental property for low-income/special needs tenants. The covenants contained within the agreements run with the land and are for a period of thirty years.

Plaintiff operates all Subject Properties as multi-family residences used as rental properties for special needs tenants who qualify for subsidies or other forms of housing assistance. Plaintiff's operation and use of the Subject Properties result in a financial loss.

## III. *Legal Analysis*

The court should grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

---

[10] An initialism for the Community Development Block Grant. This federal program under the U.S. Department of Housing and Urban Development grants funding to state and local governments who then fund subgrantees for community development activities.

"The express import of the Brill decision was to 'encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.'" Township of Howell v. Monmouth Cnty Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541).

Applying these standards to the motions and cross-motions before the court, the court concludes that no genuine issues of material fact exist with respect to the organization of the entities, ownership of the Subject Properties, use of the Subject Properties, or the content of the agreements that exist. Rather, the issues presented involve an interpretation and application of relevant law; therefore, the court finds the issues ripe for disposition by summary judgment.

The issue to be resolved by the court is whether the Subject Properties qualify for local property tax exemption under N.J.S.A. 54:4-3.6 for tax years 2020 and 2021.

Unless expressly exempted by our Legislature, "[a]ll property real and personal. . . shall be subject to taxation annually. . ." N.J.S.A. 54:4-1. Our State's Constitution of 1947 expressly limits the Legislature's authority to grant an exemption from local property tax, providing in part that "[e]xemption from taxation may be granted only by general laws." N.J. Const. art. VIII, § 1, ¶ 2. Thus, the grant of local property tax exemption represents a significant departure from both the principle of uniformity and the duty to share the tax burden.

Significantly, in considering the grant of a local property tax exemption, our laws "must base exemptions on the property's use, not the owner's identity." Holmdel Twp. V. New Jersey Highway Authority, 190 N.J. 74, 87 (2007). Consequently, tax exemption statutes, which are "based on the personal status of the owner rather than on the use to which the property is put, run afoul of" our State's Constitutional mandate that all property be "assessed for taxation under

9

general laws and by uniform rules." <u>New Jersey Turnpike Auth. V. Washington Twp.</u>, 16 N.J. 38, 44-45 (1954) (citation and internal quotation marks omitted).

N.J.S.A. 54:4-3.6 affords an exemption from local property tax to:

> all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt. . .

> and

> all buildings owned or held by an association or corporation created for the purpose of holding the title to such buildings as are actually and exclusively used in the work of two or more associations or corporations organized exclusively for the moral and mental improvement of men, women and children…

> [N.J.S.A. 54:4-3.6.]

Moreover, N.J.S.A. 54:4-3.6 expressly states that local property tax exemption shall apply:

> only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed. . .

> [N.J.S.A. 54:4-3.6.]

"The fundamental approach of [tax] statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation." Resultingly, the court sets the bar high for obtaining a property tax exemption since "[s]tatutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption." <u>Princeton University Pres. V. Princeton</u>, 35 N.J. 209, 214 (1961).

The court construes tax exemption statutes strictly against the claimant because exemption from local property tax represents such a departure from our State's constitutional tenets and from

10

compelling public policy principles. Accordingly, the burden rests with the claimant to prove entitlement to local property tax exemption. Princeton Univ. Press, 35 N.J. at 214; N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78, (1996), certif. denied, 520 U.S. 1241 (1997).

However, the "*raison' d'etre* for [affording taxpayers] statutory exemptions from taxation is the benefit conferred upon the public by such religious, charitable or other similar institutions and the consequent relief, . . . of the burden imposed on the state to care for and advance the interest of its citizens." Grace & Peace Fellowship Church, Inc. v. Cranford Twp., 4 N.J. Tax 391, 399 (Tax 1982). Thus, in New Jersey, the grant of a local property tax exemption represents a *quid pro quo* for the taxpayer's performance of an essential public service. See Carteret Acad. v. State Bd. of Taxes & Assessment, 102 N.J.L. 525, 528 (Sup. Ct. 1926) ("[T]he concession is due as *quid pro quo* for the performance of a service essentially public, and which the state thereby is relieved . . . from the necessity of performing."), aff'd, 104 N.J.L. 165, 138 A. 919 (E & A 1927); see also Roman Catholic Diocese of Newark v. Borough of Ho-Ho-Kus, 42 N.J. 556, 566, (1964) ("The exemption is granted by the State because of the contribution of the exempt facility to the public good.").

Therefore, our courts have adopted a three-part test to gauge a property's entitlement to local property tax exemption "'(1) [the owner of the property] must be organized exclusively for the [exempt purpose]; (2) its property must be actually . . . used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit.'" Hunterdon Medical Center v. Readington Twp., 195 N.J. 549, 561 (2008) (quoting Paper Mill Playhouse, 95 N.J. at 506); See also Center for Molecular Medicine and Immunology v. Belleville Twp., 357 N.J. Super. 41, 50 (App. Div. 2003).

**a.** *Ownership*

To satisfy the three-part test under <u>Hunterdon Medical Center</u>, 195 N.J. at 561, the entity claiming the local property tax exemption must own the property; be organized under New Jersey law; and be authorized to carry out the purpose for which exemption is being claimed. <u>See</u> N.J.S.A. 54:4-3.6. The parties do not dispute that Plaintiff owns the Subject Properties and is an entity "organized under the laws of this State" as required under N.J.S.A. 54:4-3.6.

**b.** *Organized Exclusively for an Exempt Purpose*

Pursuant to Plaintiff's 2007 Certificate of Formation, "the purposes for which [the] limited liability company is organized is to perform any lawful purpose except that of banking and insurance." Therefore, by virtue of this language, Plaintiff fails to satisfy the requirement that it be organized exclusively for an exempt purpose as set forth in N.J.S.A. 54:4-3.6.

Plaintiff maintains that it satisfies the "organized exclusively for an exempt purpose" requirement due to its Operating Agreement with SEED Corp. However, the facts do not support this claim.

Despite the language of the Operating Agreement, SEED Corp. did not form Plaintiff in 2010 – Plaintiff has existed since 2007. As stated above, the language used in the Certificate of Formation allows Plaintiff to perform any lawful purpose except banking and insurance. Additionally, although SEED Corp. is currently the sole member of Plaintiff, neither the language in the Certificate of Formation nor in the Operating Agreement restricts Plaintiff from having more members that potentially would not be organized exclusively for an exempt purpose.

Furthermore, if SEED Corp. did form Plaintiff under the 2010 Operating Agreement, the language under paragraph two states that "the nature and purpose of the business to be conducted

and promoted by the [Plaintiff] is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to foregoing." SEED Corp.'s being the sole member of Plaintiff does not change that stated broad general purpose. Nor does the fact that SEED Corp. may independently satisfy the "organized exclusively for an exempt purpose" requirement   Nothing in Plaintiff's organizing documents explicitly states, or even implies, that Plaintiff was organized exclusively to support the exempt purposes of SEED Corp.

Plaintiff argues in their brief that the court should follow the "integrated operations test" the court used in Mega Care, Inc. v. Union Township 15 N.J. Tax 566 at 569 (Tax 1996). The court in Mega Care, Inc. adopted the test from Intercare Health Systems v. Cedar Grove Tp., 11 N.J. Tax 423 (Tax 1990), aff'd, 12 N.J. Tax 273 (App.Div.1991), certif. denied, 127 N.J. 558 (1992). Additionally, the Appellate Division has previously cautioned the court not to solely base its determinations on the corporate documents, and that "courts are not barred from considering extrinsic information if relevant to ascertaining the meaning of the corporate documents." International Schools Services, Inc. v. West Windsor Township, 381 N.J. Super. 383 at 385 (App. Div. 2005). However, Plaintiff's reliance on this test is misplaced.

In all three opinions, the organization documents in question limit the activities of the entity in at least some manner. The organizational purpose of the entity in Intercare states the following:

> SECOND: The purposes for which this corporation is formed are:
>
> (a) To establish, maintain, administer, operate and manage, either directly, through subsidiaries or in cooperation with other organizations, such facilities and services providing health care for sick, injured, disabled, or aged persons providing for the preservation of health as the Board of Directors may deem from time to time appropriate, including but not limited to, hospitals, hospital centers, infirmaries, dispensaries, clinics, laboratories, nursing homes, home health care centers, fitness centers,

rehabilitation clinics for the handicapped, schools and educational training centers for medical technicians, nurses and others and services of every kind and nature which will add to and improve the quality of health and the delivery of health care services to the general public and the community served by the corporation.

[Intercare at 430.]

In Mega Care, Inc.:

 The purposes recited in the certificate are the operation of one or more skilled nursing facilities and "[to] support and encourage health care services through providing financial and management assistance to and in all other ways aiding and supporting social and health care related organizations exempt from Federal income tax…." There is no identification of a particular hospital. It is contended that Mega Care's by-laws specifically reflect integrated operation with a hospital; but the applicable portions of the by-laws are not clearly found in the moving papers, and the requirement of incorporation for hospital purposes pertains, the cases all indicate, to the certificate, not to the by-laws.

[Mega Care, Inc. at 575 n.4.]

And in International:

The purposes which the Corporation will hereafter pursue are: (1) to aid, promote and encourage, by all appropriate means, including gifts of money or other property, or by other means, schools, facilities, and other organizations that are exclusively educational in character, (2) to foster the provision of education by the payment of salaries, fellowships and grants to teachers and instructors, and (3) to devote all or a part of the income or any or all of the principal of any property, real or personal, to the furtherance and support of projects and institutions that are exclusively educational; provided, however, that no part of the net earnings of such schools, facilities, projects, institutions and other organizations inures to the benefit of private shareholders or individuals, and provided further, (a) that no substantial part of the activities of such organizations is carrying out propaganda, or otherwise attempting, to influence legislation, and (b) that such organizations do not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

[International at 385.]

14

This stands in stark contrast with Plaintiff's organizing documents. Both its Certificate of Formation and its Operating Agreement do not limit the activities of Plaintiff except in circumstances when Plaintiff could not legally operate regardless. The court concludes from the three above-mentioned opinions that the court should use the integrated operations test when it cannot determine from an entity's organizing documents that the entity was organized exclusively for an exempt purpose. The extrinsic evidence would then be relevant to determine the purpose of forming the entity. No such ambiguous situation exists here with Plaintiff's organizing documents.

Provided that a New Jersey limited liability company is duly organized for any lawful purpose under the laws of New Jersey, the limited liability company statute does not make generation of a pecuniary profit material to its formation. The statute does not preclude a limited liability company from including language that establishes that the created entity is organized and operated for a tax-exempt purpose. Thus, the court will not speculate why such broad language was used for drafting Plaintiff's Certificate of Formation. Nor will it speculate why similar broad language was included in the Operating Agreement between SEED Corp. and Plaintiff. The court need only know the resultant legal effect, not the specific purpose or intent of such broad language.

This court opined on this same issue and was affirmed by the Appellate Division in an unpublished decision 1785 Swarthmore, LLC v. Lakewood Twp., 2015 N.J. Super. Unpub. LEXIS 2478.[11] The Appellate Division did not publish the decision in 1785 Swarthmore, LLC, which makes the opinion non-precedential. Nonetheless, because it affirmed this same court's decision at the trial level; because of Plaintiff's reliance on Railway Avenue Properties LLC v. Paterson

---

[11] "[N]o unpublished opinion shall constitute precedent or be binding upon any court." *R.* 1:36-3, *see also Trinity Cemetery Assoc. v. Twp. of Wall*, 170 N.J. 39, 48, (2001) (concluding that an unreported decision serves no precedential value and cannot reliably be considered part of our common law).

City, 2018 N.J. Tax Unpub. LEXIS 52,[12] which discussed 1785 Swarthmore, LLC; and for the benefit of the parties, this court's holding in that matter merits discussion.

1785 Swarthmore, LLC ("Swarthmore") was a single member New Jersey limited liability company with a New Jersey nonprofit corporation as its sole member. Swarthmore's Certificate of Formation stated that it was organized "to engage in *any activity* within the purposes for which Limited Liability Companies may be formed pursuant to the New Jersey Limited Liability Company Act." Id. at *2-*3 (emphasis added). Additionally, Swarthmore's operating agreement specified that its purpose was to "conduct [] *any* legal business enterprise." Id. at *2-*3 (emphasis in original).

After formation, its single member conveyed to Swarthmore all of its rights in and title to a certain parcel of real property for nominal consideration. Id. at *3. The municipality denied Swarthmore's tax exemption claim and a tax appeal ensued. Id. at *4. This court denied the exemption claim. The court concluded that Swarthmore failed to demonstrate it was organized exclusively for charitable or religious purposes; therefore, it did not satisfy the criteria for exemption under N.J.S.A. 54:4-3.6. Ibid.

On appeal, the Appellate Division rejected Swarthmore's argument that its status as a single member limited liability company, therefore a disregarded entity for income tax purposes, should result in its single member being viewed as the property owner. Id. at *16-17. Significantly, however, the Appellate Division highlighted that Swarthmore "was not formed explicitly for a nonprofit purpose . . . [t]herefore, . . . the organizational purpose and the ownership elements of the exemption statute's first prong are not met. . ." Id. at *16. The court further emphasized that:

---

[12] Also unpublished. See Footnote 11.

Swarthmore did not specifically limit its stated purposes to any extent in its Certificate of Formation. . . Swarthmore's stated purpose was very broad. . . [h]ence, *Swarthmore could have been formed and operated for any number of non-exempt purposes* and thus has not satisfied the organizational purpose requirement under the statute. [Id. at *21 (emphasis added).]

Although the Appellate Division acknowledged that Swarthmore satisfied the second and third prongs of the criteria for exemption enumerated in Hunterdon Medical Center, 195 N.J. at 561, the broad expanse of Swarthmore's organizational documents, which permit it to engage in any lawful purpose and engage in any legal business enterprise, failed to demonstrate that Swarthmore was organized exclusively for a tax-exempt purpose. 1785 Swarthmore, LLC, at *21-22.

Here, Plaintiff's sole member, SEED Corp., is a New Jersey nonprofit corporation whose Certificate of Formation restricts its operation exclusively to specifically enumerated charitable purposes. These include providing low-income housing and the advancement of the objectives of Advance Housing, Inc., a New Jersey not for profit corporation. While SEED Corp. itself may satisfy the "organized exclusively for an exempt purpose" prong, Plaintiff's organizational documents establish that it does not.

Plaintiff additionally argues that it uses the Subject Properties actually and exclusively in the work of SEED Corp. and Advance Housing, Inc., both of which are exclusively organized for the moral and mental improvement of men, women, and children. Due to this, Plaintiff posits that it qualifies for tax exemption as a real estate holding company established for the purpose of holding title to the Subject Properties under N.J.S.A. 54:4-3.6. This argument does not sway the court.

The holding company exemption under N.J.S.A. 54:4-3.6 requires the following:

all buildings owned or held by an association or corporation created for the purpose of holding the title to such buildings as are actually and exclusively used in the work of two or more associations or corporations organized exclusively for the moral and mental improvement of men, women and children...

[N.J.S.A. 54:4-3.6.]

Thus, this exemption requires that the property be actually and exclusively used in the work of two or more entities that are organized exclusively for the moral and mental improvement of men, women, and children. Notably, this exemption provision does not impose an exempt purpose requirement on the holding company other than "holding the title to such buildings."

Under SEED Corp.'s Certificate of Incorporation and its By-Laws, it likely meets the statutory requirements. Although no evidence exists in the record for Advance Housing, the parties do not appear to dispute that Advance Housing meets the statutory requirements. Therefore, for the purpose of this analysis, the court will assume that both entities meet the statutory requirements.

Plaintiff describes itself as a single-purpose entity formed as a real estate holding company for SEED Corp., which in turn is organized to provide low-income housing. Thus, SEED Corp.'s organizational purpose, coupled with the deed restrictions requiring exclusive use of the Subject Properties as low-income housing, satisfies the criteria for exemption.

It is uncontested that Plaintiff is the fee owner of the Subject Properties; however, neither Plaintiff's organizational documents nor the NJHMFA bond issuance documents provide that Plaintiff was formed as a single purpose entity with no operations and no assets besides the Subject Properties. The agreement states:

> …and JERSEY CITY TWO, L.L.C., (the "Owner" or "Borrower"), a non-profit limited liability company organized and existing pursuant to the laws of the State of New Jersey and duly authorized to transact business in the State of New Jersey.

This language greatly differs from the language used to form <u>Railway Avenue Properties, LLC</u> (<u>Railway Avenue</u>), on which Plaintiff relies in its brief.[13] The language identifying the entity Railway Avenue in its bond issuance documents state that Railway Avenue "is a single purpose entity and subsidiary of Apple[14]…and will have no operations and no assets except for the Wabash Avenue facilities and the [Subject Property] facilities…" <u>Railway Avenue</u> at *12.

Moreover, Railway Avenue's formation documents state that it "is organized and shall be operated exclusively to further the tax-exempt purposes of its sole member, Apple Educational Services, Inc…" <u>Id.</u> at *11. No such similar language exists in Plaintiff's formation documents to restrict its operations. As noted above, both Plaintiff's Certificate of Formation and Operating Agreement allow Plaintiff to engage in any lawful act or activity.

Additionally, in defining the "Project" funded, the issuance documents state, in part, that:

> **"Project"** means the Improvements located on the Land that together with the Land is financed, in part, with the proceeds of the Loan…
>
> (a) The proposed project is located in the City of Jersey City in the County of Hudson, in a residential neighborhood. The project involved the rehabilitation of a four (4) one bedroom units with a bedroom, living room, kitchen, and bath in each unit.
>
> (b) The project it so be utilized at all times in accordance with the types of use as permitted by the Act and the Program and as may be approved by the Agency. The Project shall be subject to use and occupancy and/or lease agreements between the Owner and the residents.

---

[13] See Footnote 11.

[14] Apple Educational Services, Inc. formed Railway Avenue Properties, LLC to purchase and hold real estate in a leasing agreement with the Paterson Charter School for Science and Technology.

However, the NJHMFA loans are limited to a 30-year duration, as stated in the agreements, after which all restrictions will disappear. [15] Similar language appears in the CDBG Agreements.[16] The court does not view this length of time as long enough to satisfy the legislative purposes and objectives of the property tax exemption statute. In addition, and most importantly, it would appear from the documents submitted that at the end of the taxpayer funded mortgages and financing agreements, the Subject Properties will become unrestricted assets of Plaintiff, and not assets of SEED Corp.

In Railway Avenue, the court cites Center for Molecular Medicine and Immunology v. Township of Belleville, 357 N.J. Super. 41 (App. Div. 2003) ("CMMI") to discuss the ownership issue in Railway Avenue. In CMMI, the county conveyed property to the taxpayer through deeds that the court concluded were effectively leases. Id. at 50-51. The central issue in that case was whether the taxpayer satisfied the portion of the first prong of the exemption test where the taxpayer seeking the exemption must be the property owner. The court concluded that the Legislature intended the ownership requirement to prevent abuses of the statute. Id. at 53-54. The court then ruled that the county conveyance constituted constructive ownership because it created a tenancy of 115 years, and that a constructive ownership requirement to include 99-year leases would have no adverse effect on the legislative purpose of the property tax exemption statute. Id at 51-54. The court created a two-prong test to determine if a lease agreement would satisfy the

---

[15] Section 2 in the Financing, Deed Restriction and Regulatory Agreements state, among other items, that the permanent mortgage term is thirty (30) years; Section 7 states that the Agreement shall remain in full force until all indebtedness has been paid in full; and Section 13 states that the Owner shall not make any advance principal repayment except as allowed by the Program.

[16] Paragraph 10 of the CDBG Agreements state that the Project Units shall remain affordable for a period of 30 years, and that any advance principal payments do not release Plaintiff any earlier from the full 30-year period to which Plaintiff agreed. The full 30-year period will remain regardless of Plaintiff's satisfaction of the CDBG Loan.

ownership requirement: Firstly, there must be a long-term lease agreement sufficient to equate to an ownership interest in the property. Secondly, the actual owner of the property must be a public entity, agency, department, or instrumentality thereof.

Although ownership is not an issue in this matter, the court finds the reasoning behind holding that a lease term of sufficient length constitutes constructive ownership applicable to the NJHMFA and CDBG loan durations. The court in CMMI found that the Legislature intended the ownership requirement to prevent abuse of the property tax exemption statute. In following that legislative intent, this court concludes that the Legislature intended to have a degree of certainty that the taxpayer would use the property for its exempt purpose for the foreseeable future. Ownership in fee simple of the property by the charitable institution, as facially required under the statute, supports that degree of certainty that the taxpayer will not abuse the statute. Although the court has not established a minimum length of time, 30 years cannot be sufficient length of time to establish the degree of certainty the Legislature seeks to prevent abuse of the statute.

Thus, the proofs presented do not satisfy the court that Plaintiff was conceived from **inception** as a single-purpose, single owner entity designed for the purposes of securing the NJHMFA loans to acquire properties to lease to low-income tenants.

Therefore, for the above stated reasons, the court concludes that Plaintiff does not satisfy the statutory criteria for exemption as a real estate holding company under N.J.S.A. 54:4-3.6.20.

21

**IV.** *Conclusion*

In conclusion, the court finds that Plaintiff was not organized and operated exclusively for an exempt purpose and has not established that it is a real estate holding company organized from its inception as a real estate holding company to satisfy all requirements for exemption as contemplated under N.J.S.A. 54:4-3.6.

Very truly yours,


Hon. Mary Siobhan Brennan, J.T.C.